May it please the Court, I'm Robert Jobe. I'm appearing today on behalf of the petitioner, Amanpreet Singh. In 2005, an immigration judge denied Mr. Singh's application for withholding of removal. And in doing so, he emphasized the fact that all of, he said, quote, the only police he's ever had difficulty with as a result of his father's activities were the Ambala police. He further emphasized that Mr. Singh had traveled in and out of Haryana, his home state, and Punjab seemingly with no problem at all. I think since we don't have a lot of time, Mr. Jobe, I'm pretty confident that we're familiar with all of that. So maybe you can jump to, at this point, your client did get relief for withholding of removal in CAT. Yep. But did not get relief for asylum. Right. And the argument that you seem to be making has to do with the standards of the extraordinary circumstances, the changed country conditions and all of that. And so maybe you can tell me first, since he has CAT and withholding of removal, he can stay here, but not, he can't bring people over here, right? And he can't leave the country and travel like he's apparently grown accustomed to doing. He cannot leave the country and he can never see his wife and children again. Yeah. All right. Now, the fact that he got withholding of removal and CAT, and I guess the government isn't appealing the CAT, but that being said, the changed country conditions that were looked at, do they absolutely compel a finding that he should have gotten asylum? Well, yes, Your Honor. They do under the circumstances of this case. And that's why I think it's important that we start with the reason the withholding case was denied in the first instance. And that's why I wanted to emphasize that. The judge there hung his hat on one fact. He said that the persecution is limited to this one town. And in the motion to reopen that we filed, we presented evidence that, in fact, since December of 2005, when Judge Simpson denied the case, the Indian police had extended their search. They had begun searching not only in Landi, a town outside of this gentleman's, they had gone to Chandigarh, the capital city of Haryana, and they had even crossed state boundaries and started searching him out at his in-laws in Punjab. Now, before you drill down on those other facts, though, we are, of course, a court of appeal. And in order to hear your case, in order to have jurisdiction, we need to have an exhausted claim. I'd be very interested in knowing what new facts were presented to the BIA or indeed are presented here over those that were presented to the IJ in the first place. Well, those are the facts that I'm talking about, Your Honor. Those aren't new. Those aren't new. They're the same thing. It's a rehash of the same material that was done below. You're wrong. Well, that's just simply incorrect, Your Honor. As I said before, we start with the immigration judge's conclusion. His finding of fact was that the only police that had any interest in this person were the Ambala police. That's his finding of fact. We presented evidence showing that, no, that's not the case. He's not only wanted in Ambala. Police are even searching for him in another state. And it was on the basis of those facts, those new facts, that the immigration judge found that he was no longer ineligible for withholding. He rejected the former finding of fact that he could safely relocate and found that he could not safely relocate. Those new facts compelled the new immigration judge to reach the opposite conclusion. So I guess my point is, Your Honor, if those facts are sufficient for a complete about-face on the issue of withholding of removal, how could they not represent changed country conditions for purposes of asylum? You argue that this argument that you've just made was not made to the BIA and, therefore, it's, quote, not exhaustive. Right. That's simply incorrect. If you look at pages 29 and ‑‑ You're wrong, too? No, I'm saying the government's wrong. He's just reiterating the government's position, Your Honor. The government's position is that this was not exhaustive. But if you look at pages 29 and 30 of the brief, we argue throughout, based on the exact same evidence that the immigration judge used to find him eligible for withholding, we argue on page 29 in the BIA brief, the police search has permeated state lines from the place of his business in Shahpur, Haryana, to his cousin's home in Landi, Haryana, to his in-law's home in Patankot, Punjab, and to his daughter's school in Chandigarh. That's the exact same evidence that the immigration judge used to justify granting withholding and finding, notwithstanding the earlier conclusion that, in fact, this guy cannot safely relocate. But, counsel, you seem to be saying that the fact that the first I.J. did not rely upon that fact and made a different decision than the ultimate decision with regard to withholding. Because those facts didn't exist yet. Sorry? Because those facts didn't exist yet. Those facts were not before the immigration judge in 2005, Your Honor. All that stuff happened after the judge rendered his decision in 2005. Well, then, when the second decision was made, the facts were there, right? When the immigration judge granted withholding, yes, of course. Okay, so what's new between that and the time that you went to the BIA? There's nothing, Your Honor, that's new. There's nothing new. So they're, in order to reopen... The reopening occurred two years before, Your Honor. I understand, but you're talking about with respect to asylum, though, right? Correct, yes. Okay, so you have to show extraordinary circumstances to get beyond the time bar, etc.? No. You're claiming that there are new facts. We have... Counsel, I don't know how much arguing you do before the Ninth Circuit. A lot, yes. But it's not helpful for you to talk over me. Yes, I understand. To tell me I'm wrong and tell him he's wrong. I suggest you may want to rethink your strategy. But will you just listen to me for a second? I'd like to get your help on this. I'm listening, all ears. Okay, I want to know what the extraordinary circumstances are. You're misapprehending our argument, Your Honor. We're not arguing extraordinary circumstances. That's not our claim. Our claim is that there were changed circumstances. That's a second exception. The changed circumstances are the exact same circumstances that the immigration judge relied upon when he determined that this particular individual could not safely relocate. Because the extraordinary circumstances that were the bar, they would all have to exist prior to why he didn't file the one-year. So the changed circumstances are another way to get back at the asylum. That's exactly right. I get that. Yes. So the real issue here is the immigration judge found that these changed circumstances were sufficient to justify a completely new decision with respect to withholding or removal. But he didn't find these exact same facts to be sufficient to constitute changed circumstances for asylum. But the definition of changed circumstances for asylum is simply there has to be a change in circumstance that's material. Well, of course these facts, these new facts are material because they led to a grant of withholding that had previously been denied. So it's impossible for me to see how you can reconcile those two decisions. And that's been our position throughout. Do you want to save time and hear how the government responds to that so you still have time to do that? Thank you, Mr. Chau. Thank you. Good morning. Good morning. Jane Shoffner for the Respondent. Maybe you can just focus on that area because I think that obviously is the most difficult area in terms of because obviously the changed circumstances, there is a little bit of, there is something to the argument in the sense if the change, because generally withholding of removal is a higher bar than asylum. So if the changed circumstances are good enough for the withholding, then why didn't it necessarily follow that it had to be for the asylum? And I think your argument might have something to do with the different standards of review, but can you best articulate that for us? Sure, sure. That's exactly right. Our argument is based on the differing standards of review. The standard for a timely motion to reopen is that the alien present new and previously unavailable evidence that is material to the claim. Petitioner here filed a timely motion to reopen relying on the regulations that apply to an untimely motion to reopen. To meet the requirements for an untimely motion to reopen, for the purposes of applying for asylum and withholding, the alien must establish changed country conditions in his country of origin. The standard relating to the one-year bar, the exception to the one-year bar, is a little bit different. It relates to any changed circumstances, whether in the alien's country of origin, whether activities that the alien becomes involved in outside his country of origin, for example, political activities here in the United States, a change in law. So there are three different standards at work here. There's some overlap in the language. Changed circumstances appears in the regulations that apply to the untimely motion to reopen for the purpose of filing a second asylum application. The changed circumstances also appears in the language relating to the exception to the one-year bar. But the standards are a little bit different, and this Court's review is different. When this Court is looking at whether an alien has satisfied the standards for an untimely motion to reopen, and again, this was a timely motion to reopen, the Court reviews the Board's decision for an abuse of discretion. When it's looking at the one-year bar, it can only review the application of law to undisputed facts. And the facts here, you know, are very much in dispute. Well, kind of make it, let's just, tell me how this Court could affirm the BIA in a legally principled way, in that because obviously the change conditions come up on both of them. Right. Our argument is that Petitioner waived any review of the portion of the Board's decision, the Board's most recent decision, explaining that Petitioner's arguments about changed circumstances are based on a misunderstanding of what it did in 2007. That the Board had no reason to find, as Petitioner is arguing, that he established changed circumstances for purposes of the one-year bar when they granted reopening. They merely found that he satisfied the bare minimum standards for reopening, that he presented new and material evidence. I understand that, but there are two things. The argument that he's making is that the notion that there were no changed country conditions allow him to have asylum here is inconsistent with the grant of withholding of removal. Right. Is that argument a valid argument? I mean, that's what Judge Callahan asked, and you went into five minutes with my head spinning on different standards of review. I mean, it's a simple question. Is it inconsistent? Well, we would argue that this Court doesn't have jurisdiction to determine whether it's inconsistent. The argument – Would it be a winning argument to get for the moment whether we have jurisdiction to determine whether the city was exhausted or wasn't exhausted? If it were exhausted, was it a winning argument? I can't say whether it would be a winning argument, because the Board didn't have the opportunity to address that argument. What would your position have been? You certainly could say what your position would have been. I mean, we – and I – Is it in fact inconsistent? It is not necessarily inconsistent. We see these cases all of the time where an alien fails to timely file an application for asylum but is eligible for withholding tax. Was the I.J. inconsistent? That's a simple question. Forget about the exhaustion argument for the moment. And I understand your concerns, and it makes me uncomfortable to give my own personal opinion on an issue that the – Your personal opinion. You're not here representing yourself per se. You're here representing the United States. What is the – what would the position of the United States have been? And what is it with respect to this argument? Well, our position is that he's failed to exhaust the argument, and therefore there's no jurisdiction. Now, but let me ask you another question since you won't answer this one. Why should the failure to exhaust mean that he loses here? Why can't we remand to the BIA to allow the claim to be exhausted? Exhaustion is a jurisdictional bar, and there's no equitable remedy for a failure to exhaust. We're not giving him any remedy. A failure to exhaust means we can't reverse the BIA on that ground to review the claim. But why can't we remand it to the BIA? Because the whole theory is to let the BIA deal with it first. And you won't even tell me whether you think he wins before the BIA on this argument. He had the opportunity before the BIA to make that argument. He filed a notice of appeal. He really filed a subsequent brief. He did not make this argument. Well, let me say this. I'm trying to make a reason of this, that one way you could characterize this is no good deed goes unpunished. Someone took pity on him and gave him withholding and gave him cat. The cat seems pretty questionable to me, but the government didn't choose to follow it. So he doesn't make the argument there because it, like, comes as a total surprise that he gets it. But now that he gets it, that he can argue that it's inconsistent had it all been heard at one time. And perhaps it would be inconsistent if it were all heard at one time, right? If you get granted someone with ‑‑ say if the asylum had been heard at the same time, this finding could be argued to be inconsistent, right? If it had all been argued at the same time, but that's not ‑‑ That's not what happened here. Right. Didn't that happen before the I.J.? He made basically, it was argued before him, and he made inconsistent ‑‑ he made an inconsistent ruling. What Petitioner did here was present additional evidence of ongoing circumstances. Which he argues that the I.J. bought. Otherwise, he wouldn't have granted withholding from removal. And therefore, it's inconsistent with saying there are no changed circumstances to forgive the failure to file within a year for asylum. The I.J. found that this evidence of efforts to locate Petitioner countrywide called the question of internal relocation into question. But they were the continuation of the same circumstances that led to his original untimely asylum application. These new facts go to the question of whether he could safely relocate, whether the persecution was merely local. But they were the same facts. His father was an activist on behalf of the Sikh community since 1975. Can they get slightly worse? I'm sorry? Can they get slightly worse? And that's an incremental change that doesn't warrant an exception to the one‑year bar. Well, how incremental does the changed circumstance have to be? And, again, I apologize, but the board didn't address that here. They weren't asked to get into that. They merely found that it was a continuing, continuing circumstances. Just one quick question. Is it the government's position that Petitioner was seeking to reopen, but with respect to withholding and CAT, and didn't pursue at that particular hearing the asylum point? Is that their position? The government's position is that when Petitioner filed his motion to reopen before the board, he was seeking to reopen his withholding and CAT claim. When the case was remanded to the IJ, he asked the IJ to reconsider his application for asylum. He waited more than a year before filing a second asylum application. So the real issue from the government's perspective is that even when this went back, that was the first time he raised the asylum issue. And by that point, the one‑year period had passed, and there were no new facts that warranted reopening that. Is that essentially correct? Correct. Okay. So he can stay here, but he just can't bring other people over here, and he can't leave. That's correct. He can work here and get a green card or whatever. He certainly can stay here. I believe he can have work authorization. The key to withholding a CAT is he simply cannot be removed to India. But it doesn't allow you to bring other family members over. It doesn't allow you to become an LPR as far as that goes. Correct. All right. Thank you for your argument. Could I ask one more question? Oh, sure. There's something I don't understand in the immigration, the BIA decision. It's on page 0005. That's the appendix to the blue brief. It says the evidence instead shows that both the immigration judge and this board were incorrect in concluding there had been a fundamental change in circumstances since the Respondent left India. Where did they make that mistake? What mistake are they talking about? Okay. This sentence indicates that both the IJ and the board had at one point concluded there had been a fundamental change in circumstances since he left India, and that that conclusion was a mistake. Right. When this case was originally before the IJ some ten years ago, the IJ determined that Petitioner established past persecution, that his arrest and detention in 1998 rose to the level of past persecution. That finding triggered a rebuttable presumption that he had a well-founded fear of When the government is the persecutor, internal relocation is not viable. The IJ determined that the government rebutted that presumption in the original hearing before the immigration judge that Petitioner could, in fact, relocate within India. He had relocated within India. He had lived elsewhere. He had traveled. He continued to conduct business without any trouble. What the board is saying now is that they were wrong in finding that the government had rebutted the presumption that he could internally relocate, that the evidence now shows that internal relocation is not a possibility because the police are looking for Petitioner here, there, and everywhere. But this says just the opposite of what you said. That's why I'm confused. It says the evidence instead shows that both the immigration judge and this board were incorrect in concluding that there had been a fundamental change in circumstances since the respondent left India. Where was that? Where did they make that mistake that they're correcting? I don't understand that. Yeah, they made that mistake in the original 2005 and 2007 decision. In 2005 and 2007, the immigration judge and the board concluded that the government established that there had been a fundamental change to rebut the presumption of a well-founded fear that arises from the finding of past persecution. They're saying that their 2005 and their 2007 decision that internal relocation was a possibility, that that decision, those decisions were incorrect. If there are no further questions, we would ask that the Court dismiss this petition for review for lack of jurisdiction because Petitioner has failed to exhaust the relevant arguments before the Court or, in the alternative, deny the petition on the merits. Thank you. Well, first, Your Honor, with all due respect, I've got to say somebody else is wrong here. I mean, the government is saying the facts are in dispute, but they're not. When this case went before Judge Simpson, he deemed this person credible. When the case went before Judge Maggert, he deemed his testimony credible. The facts are not in dispute. Everything that he's testified to has been deemed to be true. The facts that we've been Well, tell me why I'm not right that you intentionally, I mean, you're an experienced lawyer. You intentionally don't exhaust that. You get surprised and you get withholding in cat, and so now here we are. Intentionally don't exhaust what, Your Honor? The asylum change, the argument that you're making here that the changed circumstances I completely disagree that we didn't exhaust it. I mean, what happened here is the case was reopened for withholding. When it went back before the immigration judge, we attempted to present a successive application for asylum. In its most recent decision, the BIA says we had every right to do that. To be able to do that, though, we had to demonstrate that there had been some change in circumstances that was material. It could affect his eligibility for asylum. We said the very same circumstances that compelled the immigration judge to change his mind and grant withholding relating to the issue of relocation, that that's a change in circumstance. The judge agreed that that was a change in circumstance that justified a deviation from the earlier decision denying withholding and granting, and it allowed him to now grant withholding. But for some bizarre, inexplicable reason, he never explains, he came to the conclusion that those same changed circumstances that justified the granting of withholding somehow were not changed circumstances that were material to the asylum claim. That's the test. Two things can't be reconciled. They're completely inconsistent. We did exhaust it at the BIA because when we went to the BIA, we argued the exact same facts that we had to the immigration judge in the withholding context and said these represent changed circumstances for purposes of asylum. But you didn't say in hoc verba what you just said previously, that the two were inconsistent. No. We didn't simply say, well, the two things can't be reconciled. But we used the exact same facts that the immigration judge relied upon to find changed circumstances for withholding, and we argue that those same circumstances have to be changed circumstances for purposes of asylum. That argument was exhausted. All we're saying here, the only additional fact, is we're saying the two things really can't be reconciled. The two decisions are completely different. Scalia. So couldn't the board have said, you're right, they're not reconcilable, but we think that the I.J. was wrong in the first part? Exactly. So in this decision, they're saying, oops, actually, we should have never affirmed the I.J.'s denial in the first place in withholding. But that obviously is against the law. But they didn't have the circumstance, but that was based on what the I.J. had at that time, right?  He didn't have evidence that after that hearing, the search for Mr. Singh had expanded, because up until 2005, they were only looking for him in Ambala. So in a way, they're not really saying they were wrong with what they had at that time. They're saying now, if we had everything we have now, we might have seen it differently. But how do you reconcile that with the fact that the immigration judge said the search is limited to Ambala, and now the new evidence shows that it's not? It's actually crossing state lines. The two things. I mean, the Board's reasoning is just it's not supported at all by the evidence in this record. They're wrong. Well, yes, of course, Your Honor. If I thought they were right, I wouldn't be here. All right. Any additional questions by the panel? Thank you both for your arguments. This matter will stand submitted.
judges: Korman, Callahan, Smith